IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**HENRY L. IVY, JR.,**

    **Petitioner,**

    v.                                                            **CASE NO. 18-3007-JWL**

**STEVEN HARMON,**
**Jailer,**

    **Respondent.**

**MEMORANDUM AND ORDER**

This matter is a petition for habeas corpus filed under 28 U.S.C. § 2241. Petitioner, currently in parole revocation proceedings, challenges the legality of the United States Parole Commission ("USPC") warrant authorizing his detention. For the reasons set forth below, the Court denies the petition for lack of merit.

**I. Facts**

On May 12, 1988, Petitioner was convicted in the United States District Court for the Western District of Missouri of the following crimes committed prior to November 1, 1987: conspiracy to distribute cocaine and cocaine base; possession with intent to distribute cocaine base; and use of firearms during the commission of a felony. (Doc. 20–1, at 2, 4.) On July 29, 1988, Petitioner was sentenced to "20 (twenty) years on Count 1, 20 years on Count 2, 20 years on Count 3, 20 years on Count 4, 40 (forty) years on Count 5, mandatory 5 (five) years on Count 6, 40 (forty) years on Count 7." *Id*. at 2. All counts were to run concurrent with one another, except for Count 6, which must be served consecutively to the other sentences. *Id*. The sentence also included five years of special supervised release. *Id*.

On January 23, 1991, the sentencing judge ordered that Petitioner be resentenced. *Id*. at 4. The court found that:

> defendant's post-confinement supervision should be by "special parole term" rather than the court imposed "supervised release." Supervised release became effective as of November 1, 1987, United States v. Padilla, 869 F.2d at 381, but, prior to November 1, 1987 post-confinement supervision was by "special parole term." Defendant committed the crimes for which he was convicted and sentenced prior to November 1, 1987, thus, his post-confinement supervision should be amended to "special parole term."

*Id*. at 4–5. The court scheduled Petitioner's resentencing for February 28, 1991. On February 19, 1991, prior to Petitioner's resentencing, the Supreme Court of the United States issued its decision in *Gozlon-Peretz v. United States*, 498 U.S. 395 (1991). The Supreme Court held that "for offenses committed in the interim period between October 27, 1986, and November 1, 1987, supervised release applies for all drug offenses in the categories specified by ADAA § 1002." *Id*. at 409. Petitioner was resentenced on March 7,1991. The order states that Petitioner was "to serve five (5) years special supervised release program on Counts 2, 3, and 4, to run concurrent terms of each count." (Doc. 20–1, at 6.)

The USPC issued a Certificate of Mandatory Release for Petitioner on October 9, 2013. *Id*. at 11. The Certificate included categories for "Mandatory Release," "Special Parole," and "Court Designated Parole." *Id*. The category for "Mandatory Release" is checked and provides that Petitioner:

> is entitled to 6695 days Statutory and/or Extra Good Time deductions from maximum term sentence imposed as provided by law, and is hereby released from this institution under said sentence on 07-24-2014. Said person was released by the undersigned according to Title 18 U.S.C. Section 4163. Upon release the above named person is to remain under the jurisdiction of the United States Parole Commission, as if on parole as provided in Title 18, U.S.C. Section 4164, as amended under the conditions set forth on the reverse side of this certificate, and is

> subject to such conditions until expiration of the maximum term, or terms of sentence, less 180 days on <u>09-15-2032</u> with a total of <u>6808</u> days remaining to be served.

*Id*.  Petitioner was released from prison on July 24, 2014, via mandatory release.  *Id*. at 8, 10. The Sentence Monitoring Computation Data as of July 24, 2014, has a line for "special parole term," which is left blank.  *Id*. at 8.

On September 5, 2014, a USPC Case Analyst requested that the Commission issue a warrant for Petitioner's arrest for violating the terms of his mandatory release.  *Id*. at 14–15.  The Warrant Application alleges that Petitioner was arrested on September 3, 2014, for possession of heroin, possession with intent to distribute heroin, and possession of marijuana.  *Id*.  The USPC signed and issued the warrant that same day.  *Id*. at 16.  On May 23, 2017, the United States Marshals executed the warrant and arrested Petitioner in Nashville, Tennessee.  *Id*. at 17.  The Case Analyst supplemented the arrest warrant on September 15 and September 18, 2017, to add charges for leaving the district without permission, failure to report change in residence, and failure to report to supervising officer as directed.  *Id*. at 18–19.  On October 25, 2017, the Case Analyst corrected the September 18, 2017 warrant supplement to add language stating that Petitioner had not had contact with his supervising officer since an in-person visit on August 18, 2014, and his whereabouts were unknown until his arrest in May, 2017.  *Id*. at 20.

On August 4, 2017, the Probation Office for the Western District of Kentucky attempted to conduct Petitioner's preliminary interview to allow the Commission to make a probable cause determination.  *Id*. at 21.  Because Petitioner elected to be represented by counsel and counsel had not been assigned, the preliminary interview was postponed until August 10, 2017.  *Id*. After the preliminary interview, the interviewing officer recommended that the USPC make a

finding of probable cause. *Id*. at 22. On November 16, 2017, the USPC informed Petitioner through counsel that they had made a probable cause finding. *Id*. at 23–25.

Petitioner filed this § 2241 petition in the United States District Court for the Western District of Kentucky, and the matter was transferred to this Court on January 8, 2018, due to Petitioner's transfer to Leavenworth, Kansas.

## II. Discussion

Prior to November 1, 1987, the terms of federal sentences were governed by The Parole Commission and Reorganization Act of 1976 ("PCRA"), which "empowered the Parole Commission to evaluate prisoners' behavior and to award them early release on the basis of positive institutional adjustment." *Bledsoe v. United States*, 384 F.3d 1232, 1233 (10th Cir. 2004) (citations omitted). Congress, dissatisfied with this system, passed the Sentencing Reform Act of 1984 ("SRA"), which became effective on November 1, 1987, when it repealed and replaced the PCRA. *Id*. "Under the SRA, parole was to be abolished, the Parole Commission was to be phased out, and prisoners were to serve uniform sentences under sentencing guidelines." *Id*.

The SRA eliminated the "special parole"[1] drug offenders had been required to serve prior to the SRA, and replaced it with a new system of supervised release. *Gozlon-Peretz v. United States*, 498 U.S. 395, 397 (1991). "To ensure the orderly implementation of this change," Congress delayed the effective date of the SRA's supervised release provisions until November 1, 1987. *Id*. However, a year before that effective date, Congress enacted the Anti-

---

[1] Before the SRA abolished parole in federal cases, "ordinary parole was the supervised release of a prisoner before he had completed his entire prison sentence." *Matamoros v. Grams*, 706 F.3d 783, 786 (7th Cir. 2013). "Courts have described special parole as being entirely different from and in addition to ordinary parole, as it *follows* the completion of ordinary parole and subjects the defendant to incarceration during the entire special parole term if its conditions are violated." *Id*.

Drug Abuse Act of 1986 ("ADAA"), "which mandates terms of supervised release for certain drug offenses." *Id*.

The Supreme Court in *Gozlon-Peretz*, addressed the issue of whether the ADAA's supervised release requirements apply to offenses committed during the interim period after the enactment of the ADAA but before the effective date of the SRA. *Id*. The Supreme Court held that § 1002 of the ADAA, which sets minimum and maximum sentences and mandates terms of supervised release for certain drug offenses, took effect on its date of enactment—October 27, 1986. *Id*. at 404–07. The Supreme Court also held that "for offenses committed in the interim period between October 27, 1986, and November 1, 1987, supervised release applies for all drug offenses in the categories specified by ADAA § 1002." *Id*. at 409.

Petitioner, whose offenses were likewise committed in this interim or gap period, relies on *Gozlon-Peretz* in arguing that the statutes governing his drug offense sentences substituted supervised release for parole as the method of postconviction supervision. Petitioner argues that he should be subject to supervised release rather than special parole, and that the USPC has erroneously asserted jurisdiction over a non-existent special parole term.

In arguing that he is being erroneously subjected to special parole, Petitioner points to the fact that the USPC warrant application and warrant erroneously claim that he was subject to a "5 years Special Parole Term." Despite this language, it is clear that Petitioner was released from prison on July 24, 2014, via mandatory release. The October 9, 2013 "Certificate of Mandatory Release" shows that Petitioner's release is pursuant to 18 U.S.C. §§ 4163 and 4164, and the Sentence Monitoring Computation Data as of July 24, 2014 shows mandatory release while leaving blank the line designated for special parole. (Doc. 20–1, at 8–11.)

The USPC's jurisdiction thus arises from Petitioner's mandatory release under 18 U.S.C. § 4163 (providing for mandatory release at the expiration of the sentence less a deduction for good conduct time), and the mandate of § 4164 that he be supervised "as if on parole" until the expiration of his sentence less 180 days. *See DeCuir v. U.S. Parole Comm'n*, 800 F.2d 1021, 1022–23 (10th Cir. 1986) (finding that mandatory release prisoners are treated "as if released on parole" and subject to the same conditions of release and USPC supervision as true parolees, and if not revoked, the status lasts until the expiration of the released prisoner's maximum term less 180 days).

In *Garcia-Cosme*, the court addressed a similar issue and determined that the USPC properly asserted its authority under 18 U.S.C. §§ 4163, 4164, and not under special parole. *Garcia-Cosme v. U.S. Parole Comm'n*, Civil No. 06-5698 (RBK), 2007 WL 2990673 (D.N.J. Oct. 5, 2007) ("courts have consistently held that a mandatory releasee is identical in all respects to a parolee, and is subject to the supervision of the USPC until the expiration of the maximum term, less 180 days").

Petitioner argues that it is obvious that he should be on supervised release and not parole, because one of his drug sentences is under a provision in § 1002 of the ADAA explicitly prohibiting parole. The Fifth Circuit addressed a similar argument in *United States v. Lewis*, 211 F.3d 932 (5th Cir. 2000). Lewis, like Petitioner, was sentenced for a drug offense committed during the interim period, and was later released under the mandatory release provisions of 18 U.S.C. §§ 4161–4164. *Id*. at 934. The court noted that although § 1002 mandated supervised release for all individuals convicted of drug offenses after October 26, 1986, the "good conduct statutes" at 18 U.S.C. §§ 4161–4164 were not repealed united November 1, 1987. *Id*. "The good conduct statutes provide for mandatory early release based upon good conduct credits, and

further posit that anyone so released shall be 'deemed as if on parole.'" *Id*. (citing 18 U.S.C. § 4164). The Court held that because § 235(a)(1) of the SRA specifically mandated the repeal of §§ 4161–4164 on November 1, 1987, this eliminated the possibility that Congress intended to implicitly repeal those sections with § 1002. *Id*. The court found that despite the conflict between § 1002 and the good conduct statutes, persons convicted of drug offenses committed during the interim period might experience both parole and supervised release, depending on their good conduct and the calculation of the USPC. *Id*. at 935; *see also Haywood v. Slade*, No. CV 05-2848-VBF (JWJ), 2008 WL 928209, at *3 (C.D. Cal. April 2, 2008) (adopting Report and Recommendation agreeing with the decision in *Lewis* and finding that where petitioner was released pursuant to mandatory release, the fact that he was subject simultaneously to supervised release did not affect the USPC's authority to manage his parole, and that its holding is not contrary to the Supreme Court's decision in *Gozlon-Peretz* as it did not address the mandatory release provisions).

Respondent agrees with the reasoning in *Lewis* and alleges that mandatory release supervision is separate and distinct from Petitioner's supervised release term. Petitioner argues that the decision in *Lewis* fails to address the practical questions that arise from its vision of simultaneous "parole" under the mandatory release statutes and supervised release. However, that issue is not before the Court. Furthermore, the Tenth Circuit has addressed similar practical issues resulting from the "congressional enactment of two overlapping statutes with differing effective dates." *United States v. Reider*, 103 F.3d 99, 101 (10th Cir. 1996). The Tenth Circuit in *Reider* addressed the issue of when supervised release begins for an "interim period" offense and noted the gap cases involve a "mixture of the two sentencing philosophies that are somewhat at odds." *Id*. at 102. The Tenth Circuit relied on the language in 18 U.S.C. § 3624(e), which

7

provides in pertinent part that: "The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release." *Id*. (citing 18 U.S.C. § 3624(e)); *see also United States v. Lynch*, 114 F.3d 61 (5th Cir. 1997); *United States v. Delamora*, 451 F.3d 977, 978 (9th Cir. 2006) (agreeing with the Third, Fifth and Tenth Circuits in deciding that, for "gap" cases, the term of supervised release begins on the day they are released from imprisonment, not the day their parole period ends); *see also United States v. Van Riper*, 982 F.2d 530 (10th Cir. 1992) (unpublished) (finding that from date of prisoner's release under § 4164 until his term of parole was satisfied, he was concurrently on parole under Count I and probation on Count II).

Petitioner also argues that § 4164's general rule that a prisoner subject to mandatory release be treated "as if on parole" is trumped by 18 U.S.C. § 924(c)'s specific prohibition on parole. This same argument was raised in *United States v. Fazzini*, where the defendant argued that 924(c)'s prohibition on parole prevented him from being "deemed as if released on parole" under § 4164. *United States v. Fazzini*, 414 F.3d 695, 699 (7th Cir. 2005).

The Seventh Circuit in *Fazzini* distinguished mandatory release from ordinary parole; the former merely "permit[s] good-time credits to be taken into account while computing the release date," while ordinary parole allows release after serving only about one-third of a sentence. *Id*. Conceding the existence of "some tension" between 924(c)'s parole prohibition and the release provided by § 4164, the court concluded that § 924(c) barred the benefit of early release under ordinary parole while "allow[ing] the automatic rule of § 4164 to operate." *Id*.  In reaching this conclusion, the court first analogized the good time credit aspect of mandatory release to the

availability of good time credit under the SRA.  *Id*.  Next, the court analogized "parole" under the mandatory release statutes to supervised release under the SRA.  *Id*.  The court held that "[i]t would be passing strange to think that Congress wanted persons sentenced before the Guidelines regime went into effect to be released at the end of their term, net of good-time credits, without equivalent supervision."  *Id*.

Petitioner argues that the decision in *Fazzini* should be rejected because it is "based solely on an incorrect legal premise, i.e., that supervised release is mandatory for 924(c) convictions under the SRA," when "§ 924(c) does not mandate a term of supervised release."  Despite Petitioner's issue with the court's analogy, the court's ultimate conclusion seems reasonable.  The court found that what § 924(c) prohibits is ordinary parole—"the far more generous rule, from the prisoner's standpoint, under which he or she would have become eligible for parole after serving approximately one-third of the sentence."  *Id*.

The Court is unaware of any authority holding that an interim case like Petitioner's is not subject to the mandatory release provisions.  Furthermore, when an inconsistency arises—either by way of the parole prohibition in § 1002 of the ADAA or § 924(c)—courts have resolved it in favor of upholding the mandatory release provisions.  Likewise, Congress has continued to extend those provisions for prisoners with offenses committed prior to the effective date of the SRA.  The mandatory release provisions were repealed by the SRA "and an Effective Date note under 18 U.S.C. § 3551 of the SRA clearly states that the repeal is effective November 1, 1987 (the effective date of the SRA) for offenses committed *after* that date."  *Rowland v. United States*, No. 97–5291, 156 F.3d 1232 (6th Cir. 1998) (citing Pub. L. 98-473, § 235(a)(1) (1984) (emphasis added).  However, for offenses committed prior to that date (like Petitioner's), the USPC was kept in existence for five years after the effective date of the SRA, in order to process

9

inmates whose convictions predated the SRA and who would still be incarcerated by that date. "[B]y explicitly setting November 1, 1987, as the repeal date for offenses committed after that date, while delaying the repeal for offenses committed before that date, the SRA expressly provided for the times at which the penalties under the good conduct statutes were to be extinguished." *Id*. at *4. The period for delaying the repeal has since been continuously extended, with the most recent extension lasting through October 2018. *See Ramsey v. U.S. Parole Comm'n*, 840 F.3d 853, 855 (D.C. Cir. 2016) (finding that despite the SRA's abolishment of parole, "[r]emnants linger, however, because repeal did not affect offenders convicted before November 1987" and "Chapter 311 of title 18 continues to govern parole for such offenders") (citing 18 U.S.C. §§ 4201–4218, and United States Parole Commission Extension Act of 2013, Pub. L. No. 113–47, § 2, 127 Stat. 572, 572 (Oct. 31, 2013) (extending parole system through October 2018)).

Petitioner has failed to demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3). *See Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (holding that in a habeas corpus proceeding pursuant to § 2241, "it is the petitioner who bears the burden of proving that he is being held contrary to law, and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence"); *Espinoza v. Sabol,* 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner.") (citations omitted); *Wilson v. Keffer*, Civil Action No. 08–1961, 2009 WL 1230020, at *4 (W.D. La. May 5, 2009) ("In order to state a claim for relief pursuant to 28 U.S.C. § 2241, a *habeas corpus* petitioner must allege and ultimately establish that he is in custody in violation of the Constitution and laws of the United States; and, the habeas petitioner has the burden of proof with regard to his claims

for relief."). Petitioner has failed to show that the USPC erroneously asserted jurisdiction over him based on a non-existent special parole term. The USPC's jurisdiction arises from Petitioner's release on mandatory release under 18 U.S.C. § 4163, and the mandate of § 4164 that he be supervised "as if on parole" until the expiration of his sentence less 180 days. The petition is without merit and must be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that this petition for writ of habeas corpus is **denied**.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas, on this 14th day of May, 2018.

s/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE